## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Anthony Nasseff, Jr.,

               Plaintiff,

v.

Sgt. Glenn Lisowy,

               Defendant.

Civ. No. 14-4704 (JNE/BRT)


**REPORT AND
RECOMMENDATION**

---

Anthony Nasseff, Jr., MCF-Oak Park Heights, 5329 Osgood Ave. N., Stillwater, MN 55082, *pro se* Plaintiff.

Eric J. Beecher, Esq., Minnesota Attorney General's Office, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

      Anthony Nasseff, Jr., a state inmate housed at the Minnesota Correctional Facility at Oak Park Heights ("MCF-Oak Park"), has filed a *pro se* civil rights action under 42 U.S.C. § 1983, alleging that Sergeant Glenn Lisowy violated his constitutional rights by using excessive force against him. (Doc. No. 5, Am. Compl.) Nasseff's excessive force claim stems from an incident at MCF-Oak Park on November 30, 2012, during which Lisowy repeatedly struck Nasseff's right forearm while attempting to handcuff him. Nasseff has moved for summary judgment on the merits of his constitutional claim, arguing that it is undisputed that Lisowy repeatedly struck his forearm. (Doc. No. 20, Pl.'s Mot. Req. Summ. J. 1, 4; *see also* Am. Compl. 2.) Lisowy both opposes Nasseff's motion and has filed his own motion for summary judgment based on Nasseff's failure to

exhaust his administrative remedies, as required by the Prison Litigation Reform Act of 1995 ("PLRA"). (Doc. No. 21, Def.'s Mem. of Law Opposing Pl.'s Req. for Summ. J.; Doc. No. 23, Def.'s Mot. for Summ. J.; Doc. No. 24, Mem. of Law in Supp. of Def.'s Mot. for Summ. J.)

The parties' cross-motions for summary judgment have been referred to this Court pursuant to 28 U.S.C. § 636(b)(1) and D. Minn. LR 72.1. Because the evidence in the record shows that Nasseff has not properly exhausted his administrative remedies, this Court respectfully recommends that Sergeant Lisowy's motion for summary judgment be granted, that Nasseff's motion be denied, and that this action be dismissed.

## I. BACKGROUND

In his amended complaint, Nasseff alleges that on November 30, 2012, as he was returning to his prison cell after making a phone call, Sergeant Lisowy "came on the intercom and began to antagonize [him]." (Am. Compl. 1.) Nasseff told Lisowy to "shut up" and Lisowy allegedly responded by making some threatening remarks, prompting Nasseff to fashion "a shank weapon to protect [himself]." (*Id.* at 1–2.) Lisowy, along with several other correctional officers clad in protective masks and vests, allegedly entered the sally port outside Nasseff's cell, dispensed some type of "chemical spray," and ordered Nasseff to place his hands through the slot of his cell door. (*Id.* at 2.) Nasseff alleges that Lisowy repeatedly struck his right forearm before taking him to another prison cell. (*Id.*) Those physical strikes are the basis of his excessive force claim. (*Id.*)

Sergeant Lisowy later completed a Notice of Violation Report ("the Notice"), charging Nasseff with violating prison regulations by disobeying a direct order,

threatening others, engaging in disorderly conduct, and possessing contraband weapons, including a "shank weapon" and a "sock [with] soap weapon." (Doc. No. 1, Attach. 1, Notice of Violation.) The Notice recounted Lisowy's version of the incident, which differs in several important respects from the one advanced by Nasseff in this litigation. According to the Notice, Nasseff was escorted back to his cell on the morning of November 30, 2012, "after a due process hearing," at which point correctional staff availed themselves of "the opportunity to clean out his room of contraband." (*Id.*) Once Nasseff was placed back in his cell, he became "extremely upset," hit the duress button, and repeatedly told Lisowy, "I am going to stab you." (*Id.*) He then "appeared to be making a weapon of some sort by making a sharpening motion on his shower floor with an unidentified object." (*Id.*) A short time later, Nasseff allegedly hit the duress button again and told Lisowy that he had "just made [a] shank" and that Lisowy should "come on down now so I can slice you." (*Id.*) When Lisowy and other correctional staff went to Nasseff's cell, he barricaded the door using his mattress and some blankets. (*Id.*) Correctional officers subdued Nasseff using a chemical agent piped in through the room vent and ordered him to put his hands through the book-pass of his cell to be handcuffed. (*Id.*) Nasseff complied, but when Lisowy attempted to handcuff him, he began to "grab and tear" at Lisowy's hands. (*Id.*) Lisowy then "delivered several radial nerve strikes to [Nasseff's] right forearm" and directed him to let go of his hand. (*Id.*) Nasseff was eventually escorted to "a clean room" where he was searched and attended to by a nurse. (*Id.*)

Nearly five months after the incident, on May 22, 2013, Nasseff filed a "kite," a form used to communicate with prison staff and informally resolve disputes, asserting that he wanted to "file a police report" and "press charges" against Lisowy for assault. (Doc. No. 1, Attach. 1, Kite dated May 22, 2013.) A staff member responded to the kite in writing, stating "you may contact an attorney via mail or phone." (*Id.*) Dissatisfied with that response, Nasseff filed a second kite up the chain of command on May 29, 2013, reiterating that he wanted to press charges against Lisowy for assault and "receive compensation." (Doc. No. 1, Attach. 1, Kite dated May 29, 2013.) Warden Kent Grandlienard replied that the incident had already been investigated, that Nasseff's allegations had been found to have "no merit," and that if he wanted to pursue the matter further, he had already been told what he could do. (*Id.*) There is nothing in the record regarding any other administrative remedies that Nasseff pursued, though it appears that he filed a lawsuit against Lisowy in Minnesota state court for harassment and excessive force. (*See* Doc. No. 1 at 2–3.) That lawsuit was, for reasons unknown to this Court, dismissed. (*Id.*)

## II. ANALYSIS

Sergeant Lisowy contends that he is entitled to summary judgment because Nasseff has not exhausted his administrative remedies, as required by the PLRA, by pursuing the Minnesota Department of Corrections' ("DOC") established grievance process to its final stage. (*See* Doc. No. 23; Doc. No. 24 at 1, 4.) In support of his motion for summary judgment, Lisowy has submitted an affidavit from Kim Ebeling, an Office and Administrative Specialist with the Policy and Legal Services Division of the DOC,

which outlines the DOC's grievance process and asserts that Nasseff has not completed that process by pursuing formal grievance proceedings against Lisowy for excessive force. (Doc. No. 25, Aff. of Kim Ebeling ("Ebeling Aff.") ¶¶ 3–5.)

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must point to evidence in the record that contradicts the moving party's showing and establishes the existence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997); Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials.").

Under the PLRA, an inmate must exhaust all administrative remedies available within the prison grievance system before bringing a federal action related to prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted."); *Porter v. Nussle*, 534 U.S. 516, 532 (2002)

("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life,

whether they involve general circumstances or particular episodes, and whether they

allege excessive force or some other wrong."). An inmate must "properly exhaust"

available administrative remedies by completing the prison grievance process in

accordance with all applicable procedural rules, including deadlines. *Jones v. Bock*, 549

U.S. 199, 217–18 (2007). The PLRA's exhaustion requirement is satisfied "when an

inmate pursues the prison grievance process to its final stage and receives an adverse

decision on the merits."[1] *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (quoting

*Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012)). An inmate must properly exhaust

administrative procedures even if the relief sought is not available through those

procedures and even if he "subjectively believed that there was no point to his pursuing

administrative remedies." *Lyon v. Vande Krol*, 305 F.3d 806, 808–09 (8th Cir. 2002) (en

banc). Nonexhaustion is an affirmative defense, such that defendants have the burden of

raising and proving the absence of exhaustion. *Porter v. Sturm*, 781 F.3d 448, 451 (8th

Cir. 2015).

---

[1]     The PLRA's exhaustion requirement serves three principal purposes:
(1) protecting "administrative agency authority" by affording prison officials a full and
fair opportunity to resolve disputes and correct their own mistakes before being haled
into federal court; (2) promoting efficiency by reducing the quantity of prisoner suits and
improving their quality, as well as channeling claims to administrative proceedings where
they "can be resolved much more quickly and economically . . . than in litigation in
federal court"; and (3) creating an administrative record that can be relied on if a prisoner
suit does reach federal court. *See Woodford v. Ngo*, 548 U.S. 81, 89–90, 93–95 (2006).

The Minnesota DOC has an established grievance procedure for resolving prisoner complaints, one that consists of three basic steps. (*See* Doc. No. 25, Ebeling Aff. ¶¶ 2–3.) First, an inmate must attempt to informally resolve any issues by filing a kite and, if necessary, proceeding up the chain of command. (Ebeling Aff. ¶ 3 & Ex. A.) Second, if the inmate's attempts at resolving an issue informally are unsuccessful, the inmate may initiate a formal grievance process by filing an Offender Grievance form with the correctional facility's grievance coordinator or, if he fears retaliation by the facility, with the DOC's Central Office. (*Id.*) A formal grievance must be filed "within 45 calendar days of [the] occurrence of the issue being grieved" and is ultimately addressed by the facility's warden or designee. (*Id.*) Third and finally, if the inmate is dissatisfied with the warden or designee's decision, he can appeal that decision by filing a Grievance Appeal form. (*Id.*) Once a grievance appeal is addressed by the Commissioner of Corrections, the Assistant Commissioner, or the Deputy Commissioner, no further appeals are permitted and the formal grievance procedure is at an end. (*Id.*)

In the present case, it is evident that Nasseff completed the first phase of the prison grievance procedure by filing an informal kite and then proceeding up the chain of command to the prison warden. (*See* Doc. No. 1, Attach. 1 at 1–2.) There is no evidence, however, that Nasseff completed the available administrative process by filing a formal grievance and then appealing any adverse decision. Indeed, the evidence in the record indicates that "Nasseff has not filed any grievance appeals or grievances with [the DOC's] Central Office on any topic." (Ebeling Aff. ¶ 4.) Nasseff does not dispute that he did not file a formal grievance regarding Sergeant Lisowy's use of force, but instead

7

argues that "there is no grievance procedure for defendant Lisowy's assaultive conduct." (Doc. No. 29, Pl.'s Reply to Def.'s Mot. for Summ. J. 1.) That assertion is not only unsupported by any evidence in the record, but is affirmatively contradicted by the existing evidence. (*See* Ebeling Aff. ¶¶ 3–4 (outlining the DOC's grievance procedure and asserting that Nasseff's allegation of excessive force "could have been grieved" through that procedure).) And to the extent that Nasseff subjectively believed that there were no formal grievance procedures for him to pursue, that mistaken belief does not excuse his failure to exhaust the available administrative remedies. *See Lyon*, 305 F.3d at 808–09.

Based on the unrebutted evidence in the record, this Court finds that Nasseff has failed to satisfy the PLRA's exhaustion requirement by pursuing the established prison grievance process to its final stage and receiving an adverse decision on the merits of his excessive force claim. *See Burns*, 752 F.3d at 1141. Accordingly, this Court recommends that Lisowy's motion for summary judgment be granted, that Nasseff's motion for summary judgment be denied, and that this action be dismissed for failure to exhaust administrative remedies. *See Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) ("If exhaustion was not completed at the time of filing, dismissal is mandatory."); *Barbee v. Corr. Med. Servs.*, 394 F. App'x 337 (8th Cir. 2010) (holding that "the district court should not have reached the merits of [the prisoner's] claims" where the defendants raised a nonexhaustion defense and the record supported that defense). Further, while a failure to exhaust typically warrants only dismissal without prejudice, given that the forty-five-day deadline for Nasseff to file a formal prison grievance regarding Lisowy's

use of force has long since expired and that any future attempts at exhaustion would almost certainly be futile, this Court recommends that this action be dismissed with prejudice. *See Allen v. Jussila*, No. 08-6366, 2010 WL 3521934, at *9 (D. Minn. Aug. 5, 2010) ("[B]ecause Allen can no longer exhaust his claims [due to the expiration of the deadline for appealing his prison grievances], he has procedurally defaulted on them and his suit is precluded forever and must be dismissed with prejudice), *aff'd* 430 F. App'x 555 (8th Cir. 2011); *see also Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004) (holding that dismissal with prejudice is warranted when unexhausted administrative remedies are no longer available and explaining that the "dictum that dismissal for failure to exhaust should be without prejudice would extend too far if applied to cases where . . . administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust"); *Dupey v. Smith*, No. 12-1233, 2013 WL 4198732, at *4 (D. Minn. Aug. 15, 2013) (dismissing with prejudice where the deadline for filing a prison grievance had passed because "[a]ny attempts by Plaintiff to file grievances regarding the medical treatment of his thumb . . . in accordance with the DOC guidelines would be procedurally barred").

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      Defendant Glenn Lisowy's motion for summary judgment (Doc. No. 23) be **GRANTED**;

2.      Plaintiff Anthony Nasseff's motion for summary judgment (Doc. No. 20)

be **DENIED**; and

3.      This action be **DISMISSED WITH PREJUDICE** for failure to exhaust

administrative remedies under the Prison Litigation Reform Act of 1995.

Date:  May 29, 2015

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

**NOTICE**

Under D. Minn. LR 72.2(b), a party may file and serve specific written objections to this Report and Recommendation by **June 15, 2015**. A party may respond to those objections within **fourteen days** after service thereof. All objections and responses must comply with the word or line limits set forth in LR 72.2(c). This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.